Page number fourteen three eight one seven Leona Mullins individually and as the administrator of on behalf of Devon L Mullins versus Oscar Cryanek city of Cincinnati police officer individually and others arguments not to exceed 15 minutes per side mr. Roach for the appellant may it please the court my name is Christopher Roach and I'm here on behalf of the owner Mullins for Devon Mullins estate and on on her behalf I'd actually request to have five minutes of rebuttal time let's start with the the facts of the case just go going over them relatively quickly since I've there is a factual dispute over a number of events did occur on a it was a sunny day it's actually probably about 300 feet from here down at the Fountain Square in front of the Fifth Third Bank earlier in that day there were reports through the Cincinnati Police Department that there were some african-american youths that were taking guns and putting them into the Sawyer point there was a party or a private group that was down there officer Cyranek was not a part of that group I don't believe or if he was at the time that everything happened he had moved up to Fountain Square and at this point he had seen Devon Mullins a 16 year old walking around looking as though he was hiding something in this case he from that earlier transaction Sawyer point assume that there was a weapon hidden on eventually decides to confront confront Devon Mullins in front of that fifth third store at the time Devon Mullins is walking with one of his friends Ricardo Sims and I believe is another girl and at that point officer Cyranek actually walks up to to Devon and the initial interaction in in the video which I like Cyranek grabs or reaches towards Devon at the same time and you see Devon he actually he starts he takes a couple steps back as there's it doesn't necessarily look like he's pulling away and that's our position it doesn't look like he's pulling his arms away it just sort of looks like Cyranek has one hand on him and is pushing him back towards the corner of the Fifth Third Bank officer Cyranek says later that his reason for that was to try to contain him to keep him away from being a potential harm to others at a certain point in in that interaction there is a takedown from Cyranek officer Cyranek actually takes Devon Mullins down to the ground you can if you watch closely on the video you can see what happens is officer Cyranek gets behind Devon he does a sort of looks like a arm across his neck you can see Devon's arm right arm still moving free at that point in time as he's taken down to the ground for the remainder of the video the only thing you can really see is you mostly just see officer Cyranek looks like he's sort of behind maybe to the back left shoulder of Devon Mullins. Ricardo Sims who's one of the other people who were who were there at the scene that was Devon's friend or a somebody that Devon knew ends up saying that during that entire encounter that he witnessed he never actually heard Cyranek make any commands to Devon with the exception of eventually saying drop the gun and under the so specifically at this point or I guess at some point there's really no indication of where officer Cyranek can't tell what he says to Devon any specific time in his deposition transcripts he actually says that he would have said this or he would have said relax but he can't actually say what he was telling or commanding Devon at that point in time. At a certain point the gun comes out the only thing that we have at least from Ricardo as far as that goes or Mr. Sims is that he tells him to throw or drop the gun and at a certain point Devon tosses the gun. Isn't there a factual dispute about when that happened? I don't know if the factual dispute is necessarily about when that happened I think that I guess the the district court did try to find something to say that there was a factual dispute with that but I think that in the end it did resolve or it said that it resolved it in the appellant's favor that Devon had actually thrown the the firearm prior to any of the shots being there is the issue with the close in time argument and the court found that I mean that was the main reason was that it happened close in succession and so that it shouldn't be granted or that officer Cyranek should be entitled. That's really the critical point at which one must focus in order to make a decision about the deadly force claim correct? I mean it is part of it you're still supposed to go through the the actual analysis under Graham so you still have the three steps so I know that the amount of time definitely change the the perspective of the officer because you're not supposed to view it in 20-20 hindsight that they're supposed to be able to make reasonable decisions at the scene but there are other cases there's it's the Belts case or Blets case and in that case it was actually a an officer two officers were arresting a a juvenile a young man on a warrant when they show up to the house it's late at night they do have their uniforms on they come up through the breezeway it's just one door the the guy comes out. I would think you'd want to attach critical importance to the was thrown sufficiently in advance of the shot that the officer had an opportunity to risk despite the sequence the officer had an opportunity to reassess the situation and make a reasonable judgment that a shot was not I see more focused on that as a part of the record than you are. I mean part of it was just I guess more or less focusing on the rest of the Graham factors as well when you look at the the video closely I mean there is that point in time where you you can see something that looks like something goes in front of the windows like it's been tossed you see at around the same time is or maybe just immediately before that is when officers here neck pulls his weapon. So you think that it's not so would you say that the video is not really definitive is that what you're acknowledging or or I'm a little unclear. I mean I guess it's just you're viewing I think that a juror would be able to tell or be able to say that they think that that is the the weapon being thrown at that point in time and in the the later video when officers hearing it goes to pick up the weapon it corresponds with that that shape that you see that goes through the air in front of those in front of the doors at Fifth Road Bank down there. The I guess the the main main issue though comes down to the timing with with the Bletts case it's the same thing it's the the officers walk in and the father is actually holding a revolver at the door where the police are standing. The police make a couple demands to drop the weapon he doesn't and he is shot. Part of the issue is because he's unable to hear communicate with the officers that he doesn't know he's not able to do what they want to do he's not able to make those follow those commands and I think that that's the same thing here if the entire time Ricardo Sims you can see on the video he's actually at one point probably 10 feet away I mean it's an estimate he doesn't hear officers hearing it telling Devon Mullins anything until the point that he tells him to drop the gun and so for the entire that entire two and a half minutes he did not hear officers hearing it make any commands to Devon Mullins about what was happening and so the the toss you know that the toss happens and it's at the point that he starts to stand up that the the shot goes off now in the end it's not a couple minutes it's still probably a matter of five to ten seconds arguably between the point that you see the gun go and the point that officers hearing it is standing up in that video but at the same time officers he has to stand up to get the shot off is that correct I to be honest I don't I don't know if he needed to in his deposition he says that he's he's in the process of standing up as the shot or the I think actually even says two shots unless I'm just paraphrasing from Ricardo Sim and and how many gunshot wounds were there there were two shots there was just one gunshot and so from the time that it's so from the time that it's tossed actually in the entire time that officer is in with Devon Mullins in that close proximity never does Devon Mullins ever actually point the weapon at officers here okay so if it turns out looking at the video that it looks like more like instead of five or ten seconds which is a pretty good amount of time even under these circumstances if it turns out that it's more like two seconds between throwing of the gun and the first shot and then another two seconds between the first shot and the second shot aren't we left with what the district court thought was too little time for any kind of assessment that would be reasonable under those circumstances it just happened too quickly to say that that the officer is excessive force I think that the time the time frame is short but there's also everything that leads up to it so a lot of the other cases there's some sort of violent behavior that's associated with it here there there really is nothing if you want to see one of the most submissive people you could possibly see in this sort of situation Devon Mullins comes pretty close to so I don't know if the that the time frame well the whole you know the whole thing is terribly unfortunate that the question is is there some liability for a constitutional violation and that's what we'll have to figure out thank you may please the court counsel my name is Peter Stackpole I represent officer Cernak Devon Mullins had a concealed weapon on his body which he removed without any command from officer Cernak during a struggle ok so you're saying he threw the gun without without Cernak saying drop the gun I'm saying that that officer Cernak did not say hand me over the gun officer Cernak didn't give him any command while they were down on the ground struggling it was Devon Mullins pulled the gun from out where it was wherever it was concealed without any command whatsoever yes ma'am okay that that's what I thought you were saying I was just going clarify that so without any command he pulls the gun out and when officer Cernak sees the gun that is when he yells it at Devon drop it drop the gun which Ricardo Sims says is what officer officer Cernak commanded him to do now they struggled for about two minutes it was as has been said a sunny day summer day before the gun was pulled out yes ma'am so summer day they're getting sweaty officer Cernak loses control of the gun arm that Devon Mullins where he had the gun and in a split second he had to make the decision to fire two shots he didn't want to kill Devon Mullins but he had to your honors you can put your position about what the video exactly shows my position is that the video shows near simultaneous I would submit to you that there's there's really two ways that you can do this you can follow the trial court's decision accept the facts that have been alleged by the plaintiff and and determine that that you know the the gun was thrown immediately before the shots were fired you can do that qualified immunity still attaches to officer Cernak because it's near simultaneously when you look at the video clips and in my reply in support of summary judgment in the court below I analyzed the video clips in great detail and second-by-second set forth what happened and it happened you see the black blob the black cylindrical blob go over the left shoulder of officer Cernak and at that point Ricardo Sims is is is running away actually just before that he's running away it happens almost simultaneously so you could do that you could follow what the plaintiffs have said what their story is and the trial court was correct that officer Cernak in that circumstance is entitled to qualified immunity because he reasonably perceived a risk of serious physical harm or death on the alternate alternatively under Scott versus Harris I submit to you that the the video if it's looked at carefully there is a sequence of events and the sequence is they're sweaty he loses control of the arm officer Cernak loses control of the arm and then officer Cernak can be seen I don't know why I do that he could be seen unholstering his gun gesturing yeah I know it's nice record my phone in practicing it that's what I would do so he removes he unholsters his gun and at that point you see Ricardo Sims run out of the picture on various cliffs so unholster gum gun Ricardo Sims runs away and then you see the black blob go over the shoulder it is nearly simultaneous but there is a sequence and I submit to you that the the video is clear that the shots were fired then Ricardo runs then the gun comes over his left shoulder on top of that wait wait wait I'm yeah oh let you are disputing which happened first I would say that the video is I'm let me be clear I will accept the plaintiffs version of events I will accept their their facts for purposes of this appeal however and I think that qualified immunity isn't that officer Cernak is entitled to qualified immunity regardless because he reasonably perceived a serious risk of a risk of serious physical harm or death okay however if you look if you wish to and you have the discretion to do this you can look at those video clips and you can see that their story is plainly contradicted by the video all right so I if I look at the video and and take some of the testimony into consideration there's a two-minute struggle and then Cernak said drop the gun but he didn't say that until after Mullins pulled the gun out is that right yes okay there's testimony he has his finger on the trigger yes ma'am it's okay so there's a two-minute struggle Mullins pulls out the gun Cernak says drop the gun then what happens Cernak says drop the gun they're sweaty he loses control of the gun arm in the video you see him he pushes and as he pushes he's bringing out his gun you see Ricardo Sims run away you can see in one frame his hand leaves the picture in another frame his feet leave the picture and then after almost within a fraction of a second you see a black cylindrical blob go over officer Cernak's left shoulder and then there's a shot well you don't see the shot and I'm not trying to indicate to you that you can see the shot in the video but is that the point at which Cernak said he fired yes ma'am yes your that is the the sequence of events that you have the discretion to look at the shot and he presumably it's it's doesn't have any audio does not have any audio can't hear the shot so how would we I guess we'll ask your adversary about how the inference is to be drawn that it happened before the shot very very well I mean if you want to tell us that's bad but I think it's probably more appropriate for him to tell us what I can tell you for certain is that when you look at the video clip it's absolutely clear that this happened nearly simultaneously I having reviewed the clips many many times I can see a sequence but I grant you that it's it takes many many times to look at it to it's a serious risk of serious physical harm or death the other thing in the plaintiff's facts that their story of what happened Devon rids himself of the gun and then the shots are fired they're saying that he threw the gun because officer Cernak commanded him to drop it but when he throws the gun he doesn't throw it to the side he doesn't throw it to the back he doesn't just let go he that simultaneous split-second decision I mean this is this is a quintessential case where you have a split-second decision in a situation that is tense uncertain and rapidly evolving I mean he he had no choice but a reasonable officer could have thought he was still under danger given the circumstances absolutely is that your point you know I ask you something else that has occurred to me during this argument I am now seeing I think why plaintiffs counsel might have focused so much on what happened before in his argument and I gather that the idea would be that you would piece together some picture in which the officer was out of line from the very beginning and then you would use that to draw an inference almost with respect to intent on the part of officer Cernak at the time at the moment of the shooting as opposed to you the only inference you could draw is one of a reasonable officer acting in a very stressful and quick evolving situation but it would be so you would piece what do you have to say to that and this is going towards whether there was reasonable suspicion in the first instance why but it's like putting together the whole sequence to come to the ultimate to assist you in the ultimate decision about the deadly force claim I think the the court looks at immediately before the force is used and if I don't believe this to be the case but if there was a mistake about reasonable suspicion officer Cernak certainly still had the ability to even if he was mistaken about whether he had a specific set of articulable facts that allowed him to detain him he would still be able to protect himself from someone who removes a firearm concealed on his body and has his finger on the trigger and point well and raises it up toward him so he would still have the ability to defend himself regardless I think it's abundantly clear that reasonable suspicion existed in fact I believe that they conceded so in their briefing they said regardless the one part of that is irrefutable is that the worst crime that Mullins could be suspected of was possessing a concealed firearm so I think they've conceded that point your honors on behalf of officer Cernak thank you very much we would ask that you I guess I'll start with one of the last questions that was asked just about the sort of the reasoning for putting the other information about leading up to it is in large part because of the gram factors sort of not sort of officer Cernak's perception of Devon as being a potentially dangerous individual is up to that point in time and there's some other contradictory whatever they were up to that point in time I guess one could argue that it was the point at which pulling out a gun was pulled out that was kind of the determinative moment from the officer's point of view and and the important thing about that though is that if during that entire two minutes like Ricardo Sims has stated his affidavit if if there were no commands from officer Cernak at that point in time what is Devon Mullins going to think besides other than to get out his weapon you know it's got to be this is what he's here for I don't know what else he's not telling me I'm under arrest he's not telling me to put my hands behind my back he's not telling me to lay down on the ground he's not telling me to do anything he's just pushing me back in a corner and is sort of wrestling with me and I think that that also goes another one of the gram factors is the severity of the crime at issue because even the the trial court pointed out that one of the the things that could have been was a crime for removing a weapon in the presence of an officer which is a felony in Ohio so raised the level of severity of the crime in that case there's also the case with you know where he threw the gun I mean Cernak at the same time he has said that it was not pointed at him at any point in time it was never pointed at him when it was thrown you can see that Devon Mullins is pushed back into a corner so if this is the corner here Devon Mullins is pushed back you can see that he's facing maybe not directly to this corner but sort of towards caddy corner and Cernak's over here he's got a gun if it's in his right I mean whatever hand it's in I don't know how you necessarily toss it forward he's got a very limited range of spaces that he can throw the gun I mean even dropping the gun where he's at does it leave him with any sort of option with with what to do because he's still in that same area with the gun at the same time he's still in the he's still got it I mean if you're if you're in his position pretty much the only thing that you could do is get the gun as far away from you as you possibly can well at the whole beginning of the thing he could have said I've got a gun and that would have you know ended the whole thing right there too bad he didn't know to do that well I mean part of it is you I mean he's he's just getting approached I mean you don't necessarily know why it might just be something where he was trying to play his card see if maybe he thought that he was in trouble for something else but I mean I don't know what that reason is but if he's not given a command to to drop on the ground to put your hands behind your back what else is he supposed to do I mean he didn't have any other options so it was Sam's who said that there what he heard nothing yes being said what did the officer say the what he would have said in that situation okay see you make sure I had everything else and then there was also one point where just he made the the point that officers here Nick had said that he was losing control of Devon's arms from the very beginning he was he was investigating Devon for having a potentially having a habit at the very beginning the very first takedown he has his arm around Devon's neck his right hand is free I mean it's there there is something there too with the video that's not necessarily matching up with all of the testimony of officers here Nick and and one of those other things is watching the tapes in in his deposition officers here Nick says that when he put his hands on him that Devon pretty much resisted but if you go back and look at that original that original the very first contact with them you'll see Devon I mean it's it's basically he's being led backwards there's no pushing he has his hands up at the same time he's not being told to do anything and he gets back into the corner so I think that there are issues with even the Nick statements and I think that can even lead to the implication that maybe when he threw the gun or pulled the gun out that his finger wasn't actually necessarily on the gun at that point in time and I thank you for your time we appreciate the argument both of you've given and we'll consider the case carefully thank you I don't think we need to call the cases but we probably need to note for the record that there are several cases on the briefs and that judge Griffin will be participating in those as well in conference with us at a later time